# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Ghulam Anjum

        Plaintiff,

v.

        Case No. 2:06-cv-00319
        JUDGE SMITH
        Magistrate Judge Kemp

Mark Hansen et al.,

        Defendants.

## OPINION AND ORDER

Plaintiff, a lawful permanent resident, brings this complaint seeking for this Court to compel the adjudication of his immigration proceedings to remove the conditions on his residency and apply for naturalization. Defendants move to dismiss for lack of subject matter jurisdiction and failure to state a valid claim under Federal Rules of Civil Procedure (FRCP) 12(b)(1) and 12(b)(6) respectively; in the alternative, Defendants move to remand for administrative adjudication of Plaintiff's applications. For the reasons below, this Court determines that it has jurisdiction and DENIES Defendants' Motions to Dismiss (Doc. 9).

## I. FACTS

In considering Defendants' Motions to Dismiss, the Court accepts as true the well-pleaded factual allegations set forth in the Complaint.

Plaintiff Ghulam Anjum is a forty-eight-year-old citizen of Pakistan and has been living in the United States since October 2000. Since October 2001, he has been a

conditional lawful permanent resident, courtesy of his marriage to an American citizen April 23, 2001 (Compl. at 3).

Plaintiff has commenced the proper procedures with the United States Citizenship and Immigration Service (CIS), formerly the Immigration and Naturalization Service (INS), to adjust his immigration status. Namely, Plaintiff filed (1) an I-751 form, received July 10, 2003, to remove the conditions on his residency status; and (2) an N-400 naturalization form, received Oct. 26, 2004, to apply for citizenship (Compl. at 3–4). The Lincoln, Nebraska CIS Service Center (NSC) received and transferred these proceedings to the Columbus, Ohio CIS office (Compl. at 4).

Thus far, the CIS has failed to process Plaintiff's applications (Compl. at 3–4). More than forty-four months have passed since Plaintiff filed the I-751 Petition; twenty-nine months have passed since the filing of the N-400 Application for Naturalization. CIS has failed to schedule an interview or adjudicate the I-751; meanwhile, CIS cancelled both interviews scheduled for the N-400 Application (Compl. at 4; *see also* Pl. Ex. C).

Defendants, representatives of CIS and the U.S. Department of Homeland Security (DHS), assert that practical and security reasons have slowed the adjudication process of these forms (*See* Def.'s Mot. to Dis. at 2–5). They claim that Plaintiff's I-751 "is pending at NSC," awaiting the completion of background security checks. (Def.'s Mot. to Dis. at 2). Likewise, they claim the N-400, which entails more extensive background checks and a mandatory interview of the applicant, awaits completion of the statutory background security checks before the mandatory interview can be scheduled and the adjudication process can proceed (Def.'s Mot. to Dis. at 2–3). As of the time of

the Complaint, Defendants claim that more than 70,000 I-751 petitions and 500,000 N-400 applications pend final CIS adjudication (Def.'s Mot. to Dis. at 2–3).

Claiming an "unreasonable delay" of nearly three years for the I-751 and more than 18 months for the N-400 (Compl. at 4), Plaintiff filed a complaint May 1, 2006 seeking declaratory relief from this Court compelling CIS officials to complete review and adjudication of Plaintiff's residency and naturalization applications (Compl. at 6). The Complaint asserted this Court had jurisdiction to provide the relief sought under 28 U.S.C. §§ 1331, 1361 (the latter provision from the Mandamus and Venue Act of 1962), 5 U.S.C. § 701 *et. seq.* (Administrative Procedures Act), and 28 U.S.C. § 2201 *et seq.* (Declaratory Judgment Act) (Compl. at 3).

Defendants move to dismiss the claim for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1) and failure to state a valid claim under FRCP 12(b)(6). In the alternative, Defendants ask this Court to remand the proceedings pending adjudication of the applications by CIS (Def.'s Mot. to Dis. at 1).

## II. DISCUSSION

Plaintiff seeks declaratory relief "in the nature of mandamus" compelling CIS adjudication of his immigration proceedings to remove the conditions on his permanent residence status and apply for citizenship (Compl. at 1, 6).

Defendants have moved to dismiss for lack of subject matter jurisdiction and failure to state a valid claim. In the alternative, Defendants seek remand to CIS to continue processing Plaintiff's claims in the manner heretofore applied.

3

This case comes as a matter of first impression in this Circuit. One District Court in the Southern District of Ohio entertained a similar request for mandamus relief on the delayed adjudication of a post-interview N-400 application, but the plaintiff sought a different form of statutory relief. *See Affaneh v. Hansen*, No. C-3-06-267, 2007 WL 295474 *4–5 (S.D. Ohio, Jan. 29, 2007) (finding subject matter jurisdiction pursuant to 8 U.S.C. § 1446(b), but remanding to CIS. However, relying on the persuasive authority of the majority of District Courts to have handled such claims, this Court denies both of Defendants' Motions to Dismiss as well as its alternative request for remand. Discussion of each matter follows.

**A.      Subject Matter Jurisdiction, Writ of Mandamus**

Plaintiff has premised this Court's subject matter jurisdiction on 28 U.S.C. § 1361 of the Mandamus and Venue Act of 1962 (hereinafter "Mandamus Act") and 5 U.S.C. § 701 *et. seq.* of the Administrative Procedures Act (hereinafter "APA") (Compl. at 3). Additionally, Plaintiff asserts supplemental jurisdiction from the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* (Compl. at 3; *cf.* Pl. Reply at 9 ("Plaintiff acknowledges that [this Act] does not provide an independent basis of jurisdiction.")). Defendants claim in their motions that neither the Mandamus Act nor the APA provides subject matter jurisdiction for this Court to compel CIS adjudication of Plaintiff's claims (*See* Def.'s Mot. to Dis. at 6–10).

In *Lazli v. U.S. Citizenship and Immigration Servs.*, No. 05-CV-1680-BR, 2007 WL 496351 (D. Or., Feb. 12, 2007), the Federal District Court of Oregon recently synthesized the decisions of numerous district courts regarding whether the Mandamus Act or APA established subject matter jurisdiction for the reviewing court to issue

4

declaratory relief to remedy unreasonable delays in the adjudication of immigration proceedings. Noting the uncertainty that the Supreme Court's decision in *Ardestani v. INS*, 502 U.S. 129 (1991) (suggesting Congress intended for the provisions of the Immigration and Nationality Act to supplant the APA) has cast over subsequent district court decisions finding subject matter jurisdiction in the APA, *e.g.*, *Yu v. Brown*, 36 F. Supp. 2d 922, 929 (D. N.M. 1999), Judge Brown in *Lazli* adopted the recommendation of Magistrate Judge Stewart finding subject matter jurisdiction in the Mandamus Act. *Lazli*, 2007 WL 496351 at *1, 5, 14, 19 ("Because the relief sought by plaintiff[] is basically the same under both [the Mandamus Act and APA] and because *Ardestani* raises a question concerning the applicability of the APA to agency action under the INA, this court will analyze plaintiff's entitlement to relief solely under the [Mandamus Act]." *Id.* at *8 (citation omitted)).

This Court agrees with the well-reasoned analysis in *Lazli* and concurs that the Mandamus Act provides subject matter jurisdiction for Plaintiff's claims in this case.

Per 28 U.S.C. § 1361, "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus relief "is a drastic [remedy], to be invoked only in extraordinary situations." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980).

The Supreme Court has construed this "drastic" procedure "to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (citations omitted); *see also Your Home Visiting Nurse Servs. v. Shalala*, 525 U.S.

5

449, 457 (1999) (same). Pursuant to the statutory grant and the Supreme Court's interpretation of the Mandamus Act, the Circuit Courts of Appeals have devised a three-part test as a pre-requisite for district courts to issue discretionary mandamus relief. First, the Plaintiff must present a "clear and certain claim;" second, the defendant government official must have a "nondiscretionary, ministerial" duty to act "so plainly prescribed as to be free from doubt;" and third, "no other adequate remedy [can be] available." *Patel v. Reno*, 134 F.2d 929, 931 (9th Cir. 1988) (citation omitted); *see also Johnson v. Rodgers*, 917 F.2d 1283, 1285 (10th Cir. 1990).

Construing the facts in the light most favorable to the Plaintiff as this Court must, and considering the unseemly delay in the adjudication of Plaintiff's immigration proceedings, the drastic relief of mandamus appears warranted. Discussion of how the Plaintiff would satisfy each element of the mandamus test follows below.

### 1. Clear and Certain Claim

Plaintiff correctly notes that Defendants have not contested whether Plaintiff established a "clear and certain claim" (Pl. Reply at 2). Presuming the facts in the pleadings to be true, Plaintiff timely filed the I-751 petition and N-400 application and now has awaited adjudication of both matters for more than two years (*See* Compl. at 3–5). At this stage of the proceedings, this Court cannot say Plaintiff fails to present clear and certain claims for the I-751 petition and N-400 application. *See accord Lazli*, 2007 WL 496351 at *9, 15.

### 2. Nondiscretionary, Ministerial Duty

Title 8 of the U.S. Code provides that an interview *shall* take place within ninety days of the submission of the I-751 unless waived by the Attorney General, 8 U.S.C.

6

§ 1186a(d)(3) ("The interview under [this statute] *shall* be conducted within 90 days.")
(emphasis added) and *directs* the Attorney General to complete his review within ninety
days of the interview, *id.* at § 1186a(c)(3)(A) ("[T]he Attorney General *shall* make a
determination, within 90 days of the date of the interview, as to whether the facts . . .
alleged in the petition are true . . . .") (emphasis added). The statutory language clearly
suggests a mandatory duty to process I-751 petitions rather than a discretionary duty. The
implementing regulation reflects such a mandatory duty. *See* 8 C.F.R. § 216.4(b)(1)
(noting "The director of the regional service center *shall* review the Form I-751 . . . to
determine whether to waive the interview required by the Act" and that "The director
*must* either waive the requirement for an interview and adjudicate the petition or arrange
for an interview within 90 days of [the filing date]") (emphasis added).

Defendants rely on *Robertson v. Attorney General*, 957 F. Supp. 1035 (N.D. Ill.
1997), which found the statutory language and its implementing regulations "merely
directory" in the absence of a penalty provision for agency non-compliance or persuasive
legislative history. *Id.* at 1037 (citing *Brock v. Pierce County*, 476 U.S. 253, 260–62
(1986)).  This Court is not persuaded by this reasoning.

First, the *Lazli* Court distinguished the Supreme Court's rationale in *Brock*—that
Congress did not intend to deprive the Department of Labor of the jurisdiction to
adjudicate grant funds misuse claims for failure to comply with a 120-day statutory
deadline, *Brock*, 476 U.S. at 260–63—from the non-jurisdiction-stripping relief sought
by the plaintiffs in immigration proceedings for I-751 and N-400 forms. *Lazli*, 2007 WL
496351 at *9–10 ("Finding that the director's duty is mandatory would not cause the CIS
to lose any power to make a determination on Forms I-751. Plaintiffs simply ask the

court to compel the CIS to act, either by adjudicating the I-751 petition or by setting up

an interview."). Moreover, the *Lazli* Court noted how numerous other District Courts did

not follow the *Robertson* decision in determining that CIS had "a non-discretionary duty"

to the alien plaintiff "to adjudicate immigration applications, including the I-751 petition,

within a reasonable time." *Id.* at *10; *see accord Alkelani v. Barrows*, 356 F. Supp. 2d

652, 656 (N.D. Tex. 2005); *Yu*, 36 F. Supp. 2d at 931 ("All other courts addressing this

question have held that [CIS] has a non-discretionary duty to process applications for

[Lawful Permanent Resident] status as well as other applications."). This Court agrees

with *Lazli*'s distinction and joins the District Courts in finding that CIS has a

nondiscretionary duty to adjudicate such proceedings within a reasonable time.

      Defendants' Motions suggest that Plaintiff's I-751 has been delayed pending

background security checks like the IBIS (Def.'s Mot. to Dis. at 4–5); however, this

requirement for an I-751, which is not found in any statute or federal regulation, must

"still . . . [be] complete[d]" by CIS within a reasonable time. *See Lazli*, 2007 WL 496351

at *13.

      The *Lazli* Court—in part because defendants did not contest the matter—deemed

that this nondiscretionary duty extended to the adjudication of the N-400 Application for

Naturalization as well. *Lazli*, 2007 WL 496351 at *15. Defendants in this case—for the

most part representing the same agencies (CIS & DHS) as the *Lazli* defendants—appear

to deny that CIS has a nondiscretionary duty to adjudicate N-400 applications because

"[CIS] would be violating the law if it completed adjudication on the Form N-400 prior

to the completion of [statutorily-mandated] background checks" (Def.'s Mot. to Dis. at

15).

8

To support this claim, Defendants note the statutory requirements of (1) an extensive background check for naturalization applications found at 8 U.S.C. § 1446(a) and (2) the statutory prohibition against adjudication of naturalization applications "unless [CIS] has received confirmation from the Federal Bureau of Investigation [FBI] that a full background check has been completed," Pub. L. 105-119, Title I, 111 Stat. 2440, 2448–49 (Nov. 26, 1997). Consequently, federal regulation requires the completion of the FBI investigation before the scheduling of the mandatory interview for naturalization applicants. 8 C.F.R. 335.2(b).

Current agency practice construes these background check requirements to include the following: "(a) a record check of the alien made against DHS's own immigration systems; (b) an FBI fingerprint check for relevant criminal history records . . . ; (c) a check against the DHS-managed Interagency Border Inspection System ("IBIS"), which contains records . . . from more than twenty federal law enforcement and intelligence agencies . . .; and (d) an FBI name check . . . " (Def.'s Mot. to Dis. at 14). Thus, Defendants claim they cannot schedule an interview or further the adjudication process on Plaintiff's N-400 application until the completion of the security background checks (Def.'s Mot. to Dis. at 15).

However, as the *Lazli* Court emphasized, only "[t]he FBI name check and fingerprint check are statutory prerequisites to the adjudication of a naturalization application." *See Lazli*, 2007 WL 496351 at *16–17 (noting that the "IBIS check seems to go far beyond the statutory directive"); 8 U.S.C. § 1446(a); *see also* 8 C.F.R. § 335.2(b). Further, as with the statutory language concerning the I-751, Section 1446(a) of Title 8 suggests that CIS has a nondiscretionary duty to adjudicate N-400 claims. *See* 8

9

U.S.C. § 1446(a) ("Before a person may be naturalized, an employee of [CIS] . . . *shall* conduct a personal investigation of the person applying for naturalization") (emphasis added). If anything, the FBI's statutory involvement in N-400 proceedings would be part of CIS's nondiscretionary duty to adjudicate N-400 claims within a reasonable time. This Court sees no reason to find that CIS has a discretionary duty over the timeliness of N-400 adjudications when it has a nondiscretionary duty to complete review of all other immigration proceedings within a reasonable time.

At this stage of the proceedings, this Court cannot find that Plaintiff has failed to establish Defendants' nondiscretionary, ministerial duty to adjudicate I-751 petitions and N-400 applications within a reasonable time. Rather, this Court agrees with the rationale of the *Lazli* Court and concurs with the vast majority of courts finding that CIS has a plain, nondiscretionary duty to adjudicate immigration claims within a reasonable time.

### 3. Lack of Adequate Alternative Remedies

Defendants here, like the defendants in *Lazli*, 2007 WL 496351 at *18, "allege that plaintiffs have failed to establish that no other . . . remedies are available, but reference only the remedies available to [the plaintiff] in case [the immigration application] is denied" (*See* Def.'s Mot. to Dis. at 12–13, 16 ("Plaintiff fails to explain why waiting for security checks to clear [for final adjudication] is not an available remedy." *Id.* at 12–13)).

However, such remedies "are inapplicable" pending a final adjudication. *Lazli*, 2007 WL 496351 at * 14, 18. Indeed, as the *Lazli* Court emphasized, "[c]ontinuing to wait indefinitely after waiting for over two years is not an adequate remedy . . . ." *Id.* at *18; *cf. Agbemaple v. INS*, No. 97 C 8547, 1998 WL 292441 *2 (N.D. Ill. May, 18, 1998)

10

("A contrary position would permit the [CIS] to delay indefinitely."). Delay *ad nauseam* does not provide an adequate alternative remedy.

Further, Defendants' suggestion that mandamus would permit the Plaintiff to cut in line (*See* Def.'s Mot. to Dis. at 8), as well as the fact that Plaintiff has been in the United States since October 2000 (Pl. Reply at 8), undermines their justification of the delays on national security grounds (Def.'s Mot. to Dis. at 4–5, 9).

Thus, this Court agrees with the above district courts finding that immigrants like Plaintiff have no adequate alternative remedy.

**B.      Failure to State a Claim, Remand**

A motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  All well-pleaded allegations must be taken as true and be construed most favorably toward the nonmoving party.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it.  *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim.  Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled

11

to relief."  5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 296 (2d ed.1990).  The moving party is entitled to relief only when the complaint fails to meet this liberal standard.  *Id.*

On the other hand, more than bare assertions of legal conclusions are required to satisfy the notice pleading standard.  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).  "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."  *Id.* at 437. (Quotes omitted).

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading.  A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim.  But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

*Id.*

Having found that this Court has mandamus jurisdiction, this Court cannot at this time find as a matter of law that Plaintiff fails to present a valid claim. Presuming as it must the truth of Plaintiffs' allegations (which Defendants mostly corroborate), this Court finds that Plaintiff does indeed state a valid claim for relief by satisfying the above requirements of the Mandamus Act. *See Lazli*, 2007 WL 496351 at *19 (denying defendants motion to dismiss for failure to state a claim). Further, the lengthy delays alleged in the complaint suggest that remand to CIS would not be appropriate at this stage of the proceedings. Forty-two months and twenty-eight months respectively have elapsed since Plaintiff timely filed his I-751 and N-400—more than a reasonable time for CIS to at least justify the particular delays encountered on Plaintiff's proceedings. *See*

*Lazli*, 2007 WL 496351 at *18 ("Even if the delay is attributable to other agencies, defendants have had more than sufficient time to gather the information necessary from those other agencies to offer persuasive evidence justifying the delay, but have failed to do so.").

This Court denies Defendants' alternative Motion to Dismiss for failure to state a claim upon which relief can be granted and denies Defendants' Motion for Remand in the alternative.

**C.    Remedy**

Having denied Defendants' Motions to Dismiss, this Court cannot at this time grant Plaintiff the full extent of remedy he seeks. Unlike the plaintiffs in *Lazli*, Plaintiff here has not filed a motion for summary judgment. *See Lazli*, 2007 WL 496351 at *2, 5. Plaintiff could seek final determination of his request for mandamus relief by filing a motion for judgment on the pleading, pursuant to FRCP 12(c), or a motion for summary judgment, pursuant to FRCP 56.

However, Plaintiff should bear in mind that "mandamus is an extraordinary remedy that is 'granted only in the exercise of sound discretion.'" *Miller v. French*, 530 U.S. 327, 339 (2000) (citation omitted). Although this Court may, pursuant to Fed. R. of Evidence § 201(b)-(d), (f), take judicial notice of other district courts' findings of unreasonable delays warranting mandamus relief, *e.g.*, *Lazli*, 2007 WL 496351 at * 14, 18 (forty-six months for I-751 and twenty-seven months for N-400), *Paunescu v. INS*, 76 F. Supp. 2d 896, 902 (N.D. Ill. 1999) (more than two years of a "bureaucratic nightmare" for diversity visa holders' status adjustment applications), *but see Alkenani v. Barrows*, 356 F. Supp. 2d 652, 657 (N.D. Tex. 2005) (denying mandamus relief for fifteen-month

13

delay on naturalization appeal, but acknowledging that a delay of more than two years might be unreasonable), Plaintiff bears the burden of convincing this Court that these delays are patently unreasonable. Plaintiff's Exhibits suggest that NSC and the Columbus CIS offices are currently processing I-751 and N-400 claims from 2006 (Pl. Reply Ex. A). Yet, plaintiff may wish to further specify the gross unreasonableness of the delay to persuade this Court to intervene notwithstanding Defendants' vested interest in protecting national security (Def.'s Mot. to Dis. at 4–5, 9). *See Lazli*, 2007 WL 496351 at *13, 16–18 (noting the forty-six-month and twenty-seven-month delays far exceeded the national average for CIS processing times as well as the normal processing time for FBI fingerprint checks).

Further, it bears mentioning that, unlike plaintiffs in *Lazli*, Plaintiff here has not joined Attorney General Alberto Gonzales or any representative of the FBI as a defendant. To the extent that mandamus relief may require compelling the FBI to complete the statutory name and fingerprint checks, an official representing their nondiscretionary duty would have to be joined. *See Lazli*, 2007 WL 496351 at *1–4, 18–19. However, this Court may, pursuant to FRCP 21, grant the Plaintiff leave to join the necessary parties for adequate relief. Plaintiff hereby has ninety days to do so.

### III.  CONCLUSION

For all of the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss (Doc. 9).

Per FRCP 21, this Court, in its discretion, grants leave to the Plaintiff to join parties necessary for adequate relief within ninety days and file such proceedings as it deems appropriate.

14

The Clerk shall remove Document 9 from the Court's pending motions list.

**IT IS SO ORDERED.**


 **/s/ George C. Smith**
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**

15

16